UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER M. ALLRED,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:20-CV-00135-NCC |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Christopher M. Allred ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 25) and Defendant has filed a brief in support of the Answer (Doc. 30). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I. PROCEDURAL HISTORY

Plaintiff filed his applications for SSI and DIB on May 4, 2017 (Tr. 215-27). Plaintiff was initially denied on September 20, 2017, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 146-47, 154-55). After a hearing, by decision dated

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

May 22, 2019, the ALJ found Plaintiff not disabled (Tr. 7-33).  On May 13, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022, and has not engaged in substantial gainful activity since April 6, 2017, his alleged onset date (Tr. 12).  The ALJ found Plaintiff has the severe impairments of diabetes mellitus, disorder of the urinary tract, essential hypertension, chronic kidney disease, hyperlipidemia, depression, bipolar disorder, anxiety disorder, neurocognitive disorder with a history of meningitis, and obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours and sit six hours in an eight hour workday; frequently climb ramps and stairs, never climb ladders, ropes, or scaffolds, frequently balance, occasionally stoop, and frequently kneel, crouch, and crawl; and frequently handle, finger, and feel with the right, dominant hand (Tr. 15).  Plaintiff must avoid concentrated exposures to heat, humidity, and hazards and is limited to performing and maintaining concentration and persistence for simple, repetitive, non-detailed tasks where coworker and public contact is casual and superficial, and where changes in the workplace are infrequent and gradually introduced (*Id.*).  The ALJ found that Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy Plaintiff could perform including photocopy machine operator, a marker, and an operator/collator (Tr. 25-

27).  Thus, the ALJ concluded that Plaintiff has not been under a disability from April 6, 2017, through the date of the decision (Tr. 27).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. § 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. § 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. § 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. § 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. § 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or

her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. § 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two arguments. First, Plaintiff asserts that the ALJ failed to fully and fairly develop the record (Doc. 25 at 3-8). Second, Plaintiff argues that the ALJ failed to properly evaluate Step 2 of the sequential evaluation (*Id.* at 8-15). For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Fully and Fairly Develop the Record**

First, Plaintiff argues that the ALJ failed to fully and fairly develop the record (Doc. 25 at 3-8). Specifically, Plaintiff asserts that while the ALJ determined that Plaintiff could perform light work and could frequently[2] handle, finger and feel with the right, dominant hand, the record does not contain medical evidence that addresses Plaintiff's ability to handle and finger in the workplace (*Id.* at 4). Plaintiff argues that the issue of Plaintiff's ability to handle and finger with the right, dominant hand is a dispositive issue as the vocational expert testified that an individual

---

[2] The Commissioner defines "frequent" as "occurring from one-third to two-thirds of the time." Social Security Rule (SSR) 83-10, 1983 WL 31251, *5 (1983).

limited to occasional handling and fingering with the right, dominant hand cannot maintain competitive employment (Doc. 25 at 4; Tr. 99).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. 20 C.F.R. § 416.945(a)(3) ("before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary…."). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). However, "this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

The Court finds that the ALJ's RFC determination is supported by substantial evidence. A consultative examination is not warranted when, as is the case here, the ALJ can properly

6

determine the RFC from the medical evidence provided.  *Kamann*, 721 F.3d at 950.  As a preliminary matter, to the extent Plaintiff asserts that reversal is warranted because the record does not contain a physical RFC specifically addressing Plaintiff's ability to handle and finger with his right, dominant hand, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  "'Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Cox*, 495 F.3d at 619-20).

      The ALJ determined that Plaintiff could "frequently handle, finger, and feel with the right hand" (Tr. 22).  Specifically, the ALJ found that while Plaintiff's neurologist "Dr. [David] Lee's treatment records reveal some weakness in the right [abductor pollicis brevis (APB)] muscle[3] and there is evidence of severe right carpal tunnel syndrome, the overall evidence generally reveals good upper extremity strength.  Plaintiff's primary care provider has reported [Plaintiff] moves all extremities equally and has observed normal muscle strength and tone" (Tr. 22).  In doing so, the ALJ considered the September 20, 2017 opinion of Dr. Joanne Mace ("Dr. Mace"), a state agency medical consultant (Tr. 24, 137-40).  Dr. Mace opined that Plaintiff's ability to handle using his right hand is "limited" due to severe right carpal tunnel syndrome and noted that Plaintiff was experiencing right hand weakness (Tr. 138-39).  Dr. Mace, nevertheless, opined that Plaintiff had no limitations in fingering and feeling (Tr. 138).  The ALJ found Dr. Mace's opinion to be persuasive, as it was supported by her narrative explanation and was generally

---

[3] The abductor pollicis brevis is the muscle responsible for pulling the thumb away from the index finger and may be weakened by carpal tunnel syndrome.  Tamara Marquardt, et al., *Carpal Tunnel Syndrome Impairs Thumb Opposition and Circumduction Motion*, Clinical Orthopaedics & Related Rsch. (2014), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4079857/.

7

consistent with the observations of treatment providers (Tr. 24).  However, the ALJ recognized that Dr. Mace "did not specify what the limitations [with handling and fingering] were" (*Id.*).  The ALJ found evidence unavailable to Dr. Mace at the time of her opinion warranted additional limitations in handling and fingering (Tr. 24).

In his RFC analysis, the ALJ thoroughly detailed the medical evidence of record in nearly ten pages (Tr. 15-25).  From the period after Dr. Mace's opinion and related to Plaintiff's right hand weakness, the ALJ noted that Plaintiff reported right shoulder pain at an October 2017 visit but that his primary care physician found full range of motion (Tr. 20, 753).  On February 5, 2018, Dr. David Lee, MD, indicated weakness and moderate atrophy of the right APB muscle (Tr. 20, 661).  A fine motor test revealed slow alternating movements, right greater than left (*Id.*).  Dr. Lee diagnosed right median neuropathy and concurrent diabetic autonomic neuropathy (*Id.*).  At examinations on October 1, 2018 and May 13, 2019, Dr. Lee observed continued atrophy and weakness in the right APB and slow alternating movements in the bilateral upper extremities (Tr. 21-22, 46-48, 667-68).  The ALJ also noted Plaintiff's July 6, 2017 EMG test concluding, as did Dr. Mace, that Plaintiff has "severe right carpal tunnel syndrome" (Tr. 22, 562).  The ALJ considered this evidence but, nonetheless, found that "the overall evidence generally reveals good upper extremity strength" (Tr. 22).  For example, as cited by the ALJ in his analysis, Plaintiff was found to have moderate atrophy of the right APB muscle but normal muscle tone and "good power in the right arm except for weakness in the APB muscle" (Tr. 424).  *See also* Tr. 336 (April 2017 ER record indicating normal range of motion and normal motor strength).  The ALJ also indicated that Plaintiff's primary care provider "has reported [Plaintiff] moves all extremities equally and has observed normal muscle strength and tone" (Tr. 22, 375, 459-62, 468, 474).  Indeed, Plaintiff's primary care provider also consistently noted

8

"normal[,] full range of motion all joints" and encouraged Plaintiff to exercise (Tr. 462, 468, 474, 657, 713, 754).  While Plaintiff identifies records supportive of his case, the issue is whether substantial evidence supports the ALJ's decision, not whether Plaintiff can point to other evidence that might support a contrary conclusion.  *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

The ALJ fulfilled his responsibility to fully and fairly develop the record through evaluation of Plaintiff's medical record and opinion evidence of record.  Upon a complete review of this record, the ALJ found Plaintiff could frequently handle, finger and feel with the right, dominant hand (Tr. 15).  These restrictions on work were supported by substantial evidence and adequately accounted for Plaintiff's weakness in his right arm and dominant, right hand.

**B.  Severe Impairments**

Next, Plaintiff asserts the ALJ failed to properly evaluate Step 2 of the sequential evaluation (Doc. 25 at 8-15).  Specifically, Plaintiff argues that Plaintiff's neuropathy due to uncontrolled diabetes mellitus in his bilateral lower extremities significantly limits his ability to perform basic work activities including the standing and walking required by light work[4] as determined by the ALJ in his RFC (*Id.* at 9).

At Step 2, the Commissioner must determine whether a claimant has a severe impairment.  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521, 416.921.  While a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities, the burden "is not

---

[4] Standing and walking for approximately six hours in an eight-hour workday.  20 C.F.R. §§ 404.1567(b), 416.967(b).

9

great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). The RFC determination is the most a claimant is capable of doing despite the combined effects of both the claimant's severe and non-severe impairments. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

The Court finds the ALJ's determination regarding Plaintiff's severe impairments to be supported by substantial evidence. As a preliminary matter, while Plaintiff alleged disability due to diabetes, he did not separately list neuropathy as a basis for disability on his application for benefits (Tr. 256). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed). The ALJ found Plaintiff's diabetes to be a severe impairment and Plaintiff's neuropathy stemmed from his diabetes. Indeed, multiple providers diagnosed Plaintiff with diabetes mellitus with peripheral neuropathy (*See, e.g.,* Tr. 47, 54, 74, 660-61, 675, 680). "This patient has poorly-controlled type 1 diabetes mellitus. … He does have concurrent diabetic polyneuropathy involving the lower limbs, right median neuropathy and concurrent diabetic autonomic neuropathy" (Tr. 661). Nothing in the record indicates that Plaintiff's neuropathy is "separate and apart" from his diabetes, an impairment considered by the ALJ. Thus, the ALJ did not err in not listing Plaintiff's neuropathy to be a severe impairment. *See Gregory v. Comm'r, Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018) (failure to list a specific impairment at step two is not error unless the impairment is "separate and apart" from the other listed impairments). *See also Whitworth v. Saul,* No. 2:18-CV-00034 JAR, 2019 WL

4542864, at *4 (E.D. Mo. Sept. 18, 2019) (plaintiff's peripheral neuropathy secondary to chemotherapy and lumbar stenosis were neither separate nor district from the severe impairments enumerated and considered by the ALJ, including claimant's degenerative disc disease and Hodgkin's lymphoma history, status post curative treatment).

Regardless, the ALJ considered Plaintiff's neuropathy in his RFC analysis including findings of decreased sensation. *Ford*, 518 F.3d at 981. *See also Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").  Specifically, the ALJ noted that at the time of his April 2017 hospitalization for viral meningitis, Plaintiff was found to have uncontrolled diabetes mellitus (Tr. 17, 415).  On follow-up from the hospitalization, Plaintiff's primary care physician referred him to a neurologist for consultation in light of several apparently neurological complaints including weakness (Tr. 17, 470-76, 762-68).  At his first consultation with the neurologist, Dr. David Lee, M.D. ("Dr. Lee"), as noted by the ALJ, Dr. Lee found Plaintiff to have "mild to moderate impairments of sensation in both feet extending to the knee level, as well as moderate atrophy of the right APB muscle" (Tr. 17, 424).  In his detailed review addressing this note and the subsequent medical record, the ALJ found that although Plaintiff was noted as having decreased sensation and abnormal gait at times, other treatment notes documented that Plaintiff's gait was normal (Tr. 21-22, 430, 462, 533, 754, 787). *See, e.g.,* Tr. 611 ("[Plaintiff] was alert and able to ambulated without device or unusual gait pattern.").  In addition, as the ALJ noted, Plaintiff denied problems with mobility or getting around (Tr. 18, 20, 22, 401, 574, 677).

The ALJ further noted that Plaintiff had normal muscle strength and tone and was able to move all extremities equally (Tr. 22, 375, 462, 474, 753). In addition, Plaintiff generally demonstrated good musculoskeletal range of motion (Tr. 22, 336, 368, 375, 462, 474, 754). Indeed, the ALJ even noted that Plaintiff was prescribed Neurontin, also known as Gabapentin, a drug prescribed to Plaintiff for his neuropathy (Tr. 18, 48). *See also* Tr. 557 ("[Plaintiff] was complaining of bilateral leg dysesthesias and this has improved with Neurontin[.]"). Therefore, even if the ALJ erred by not finding Plaintiff's neuropathy to be a severe impairment, such error was harmless in light of the ALJ's consideration of the impairment in his RFC analysis. *Givans v. Astrue*, No. 4:10-CV417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). *See also Byes*, 687 F.3d at 917 (noting that an error is harmless unless the ALJ would have decided the case differently). To the extent Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Further, Plaintiff's extensive reference to notes by his treating physician that indicate that he is unable to "return to his current job" or otherwise work are unavailing as such opinions are reserved to the Commissioner (*See, e.g.* Doc. 25 at 10 (quoting Tr. 586)). *See Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009) (issue of disability reserved for Commissioner). In conclusion, the Court finds the ALJ's determination regarding Plaintiff's severe impairments to be based on substantial evidence and consistent with Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 27th day of September, 2021.

                                            /s/ Noelle C. Collins
                                            NOELLE C. COLLINS
                                            UNITED STATES MAGISTRATE JUDGE